Matter of Cassidy (2020 NY Slip Op 00558)





Matter of Cassidy


2020 NY Slip Op 00558


Decided on January 28, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 28, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. David Friedman,Justice Presiding,
Dianne T. Renwick
Rosalyn H. Richter
Angela M. Mazzarelli
Jeffrey K. Oing,Justices.


M-3667

[*1]In the Matter of Joanne Cassidy, an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Joanne Cassidy, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Joanne Cassidy, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on July 10, 2006.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kevin P. Culley, of counsel), for petitioner.
Pery D. Krinsky, Esq., for respondent.



PER CURIAM


Respondent Joanne Cassidy was admitted to the practice of law in the State of New York by the First Judicial Department on July 10, 2006. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.
In 2015 and 2017, respectively, the Attorney Grievance Committee (AGC) served respondent with Notices and Statements of Charges alleging, inter alia, that she misused her [*2]escrow accounts to assist clients in shielding funds from creditors, testified falsely before the Committee, and failed to maintain required bookkeeping records in violation of the Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.2(d), 1.15(b)(1), 1.15(d)(1) and (2), 1.15(e), 1.8, 8.4(c), and 8.4(h). Thereafter, respondent submitted an answer in which she admitted some of the facts alleged by the Committee but denied all the charges.
In September 2015, this Court appointed a Referee, and a liability hearing was held in December 2017, at which the following facts, largely undisputed, were elicited. In November 2011, respondent agreed to provide pro bono legal services, with respect to business, tax, and litigation issues, to a construction company and three individuals connected to it: the company's president and sole shareholder, its vice-president, and an employee. In connection with the representation, respondent opened four attorney escrow accounts (account nos. 2540, 3386, 3394, and 7052). Respondent testified at her initial deposition before the Committee that she opened escrow account no. 2540 because of the company's problems with its many creditors, including one that had enforced a judgment against the company and collected $50,000 from one of the company's accounts, leaving it without sufficient funds to operate.
Respondent opened escrow account nos. 3386 and 3394 to specifically assist the vice-president and the employee, respectively, even though she was aware at the time of notices of levy and tax liens against both those individuals, and the facts that the vice-president had amassed significant credit card debt and that an income execution and wage garnishment had been imposed against the employee. Further, during the period at issue, respondent carried out a series of transfers between the escrow accounts, which originated with a $12,000 transfer from her business account to escrow account no. 7052, made the day after a judgment creditor served the company and its president with an information subpoena and restraining notice. The funds were ultimately disbursed to pay the company's operating expenses.
At her second deposition before the AGC and at the Referee's hearing, respondent testified that escrow account no. 2540 had been opened at the request of the company's vice president, not its president, as she had testified at her first deposition, because the latter had allegedly been using company funds to pay personal debts and it was feared that he might take additional funds to pay for the medical care of his ailing wife.
Further, during the end of her testimony at the liability hearing, respondent mentioned, for the first time, that escrow account no. 2540 was opened to comply with Article 3A of the Lien Law and to ensure that the company's revenue was used to maintain uninterrupted payment of the company's laborers and suppliers. However, the record shows that respondent made disbursements from this account which were unrelated to construction projects. As to the escrow accounts she opened on behalf of the vice-president and the employee (acct. nos. 3386 and 3394), respondent claimed that the intended purpose was to "pool" their funds for an offer of compromise to the Internal Revenue Service.
Respondent admitted the facts underlying charge eight, namely, that she wrote escrow checks made payable to "cash" in violation of rule 1.15(e) (requiring that all withdrawals from an attorney special account be made only to named payees and not to cash). Respondent also admitted the facts underlying charges 11 and 12, namely, that she failed to maintain required bookkeeping records in violation of rule 1.15(d)(1) and (d)(2). She maintained, however, that the four escrow accounts at issue had not been established for any improper purpose. 
It is also undisputed that respondent advanced her personal funds to the company's vice-president and to the employee to assist them with their personal expenses while she was representing them in their various legal matters, which included litigation. Respondent claimed that she did so out of sensitivity for their respective financial situations and that she did not realize that such assistance ran afoul of rule 1.8(e) (a lawyer may not advance financial assistance to a client while representing them in connection with contemplated or pending litigation).
The Referee found that the evidence sufficiently established 11 out of 13 charges. The Referee concluded that respondent opened escrow account no. 2540 in order to shield the company's funds from its current and anticipated creditors and she thereby engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of rule 8.4(c). Accordingly, the Referee sustained charge 1. In addition, the Referee found that the AGC presented [*3]"compelling evidence" that respondent opened escrow account nos. 3386 and 3394 to assist the vice-president and the employee, respectively, in evading their creditors. In support of this finding, the Referee cited to respondent's awareness of the liens and debt that would have motivated the clients to shield assets. The Referee found respondent's claim that the escrow accounts were used to pool funds for an offer of compromise to the IRS to be "far-fetched," and that it was undermined by the manner in which she disbursed funds from the accounts. Thus, the Referee found that the establishment and use of these escrow accounts also violated rule 8.4(c), and sustained charges two and three. The Referee sustained charge four, also based on rule 8.4(c), as a result of respondent's "convoluted transfers" from the accounts at issue and her attempt through reconstructed ledgers to recharacterize the transfers after the fact.
The Referee sustained charge five on the basis that respondent counseled her four clients to engage in, and assisted them in, conduct that she knew or should have known was illegal or fraudulent in violation of rule 1.2(d). And he sustained charges seven, eight, 11, and 12 upon determining that respondent improperly advanced personal funds for the benefit of the company's vice-president and employee at a time when she was representing them as clients in contemplated or pending litigation, in violation of rule 1.8(e); and upon her admitted issuance of escrow checks made payable to "cash" in violation of rule 1.15(e), and failure to maintain required bookkeeping records in violation of rule 1.15(d)(1) and (2). In addition, the Referee sustained charge nine, finding that respondent violated rule 8.4(c) when she testified falsely before the AGC at her second deposition (which testimony she repeated at the hearing).
The Referee did not sustain charge 10, since it was an alternative charge to charge nine. He also did not sustain charge six, which alleged that by allowing her clients to make use of the escrow accounts at issue she violated rule 1.15(b)(1) (requiring that funds in a lawyer's possession incident to the practice of law be maintained in a separate attorney special account). The Referee found that, while respondent improperly used her escrow accounts in connection with the other charges he sustained, rule 1.15(b)(1) does not expressly prohibit escrow accounts that are not "incident to the practice of law." Lastly, the Referee found that respondent's conduct in toto adversely reflected on her fitness as a lawyer in violation of rule 8.4(h). Accordingly, he sustained charge 13.
The Referee held a sanction hearing in December 2018. Respondent testified in mitigation as to her volunteer work for an organization called Women in Film and Video, her pro bono work for friends and family members, and her charitable donations to various Catholic organizations and a non-profit youth organization. The company's president and the employee testified as character witnesses. By report dated May 8, 2019, the Referee recommended that respondent be suspended for six months. The Referee found that respondent's misconduct was mitigated by the facts that she did not benefit personally or cause harm to any of her clients, nor did any client complain of her conduct. He further noted that she did not commingle personal funds with client funds, and that she had not engaged in a pattern of multiple kinds of misconduct in addition to her escrow related misconduct or been previously disciplined. Additionally, the Referee noted that respondent did not pose a threat to the public and had engaged in charitable and pro bono work.
Nevertheless, the Referee found that there were "potentially aggravating factors" that were relevant to sanction, especially respondent's seeming lack of remorse. With respect to respondent's false testimony in a deposition and at the hearing, the Referee noted that he did not find that she was "repeatedly" untruthful or that the ledger contained material misrepresentations, notwithstanding that he sustained the charges that were based on those transgressions. The Referee also found that respondent's actions were not "venal," as that term is defined in Black's Law Dictionary.
Now, by motion pursuant to 22 NYCRR §§ 603.8-a(t) and 1240.8(b), the Committee moves for an order confirming the Referee's liability findings in full and imposing whatever sanction this Court deems appropriate. Respondent has not submitted opposition to the motion.
The Referee's liability findings are amply supported by the record and are confirmed in full. As to sanction, the recommendation of a six-month suspension is too lenient and is disaffirmed in light of our case law imposing suspensions of two to three years for misconduct similar to that at issue here (see e.g. Matter of Kayatt, 159 AD3d 101 [1st Dept 2018]; Matter of [*4]Brodsky, 153 AD3d 52 [1st Dept 2017]; Matter of Brown, 133 AD3d 7 [1st Dept 2015]; Matter of Dalnoky, 90 AD3d 1 [1st Dept 2011]; Matter of Betancourt, 232 AD2d 9 [1st Dept 1997]). In light of this precedent, respondent's misuse of her escrow accounts to help her clients shield funds from creditors and tax authorities, in conjunction with her false testimony at her second deposition (which she repeated at the hearing), her submission of a fabricated ledger to the AGC, her improper advance of funds to clients, her writing checks to cash and failing to maintain proper bookkeeping records, her lack of remorse and absence of significant mitigation, warrant a three-year suspension.
Accordingly, the Attorney Grievance Committee's motion to confirm the Referee's findings of fact and conclusions of law should be granted, the recommended sanction disaffirmed, and respondent is suspended from the practice of law for a period of three years, and until further order of this Court.
All concur. [January 28, 2020]
Order filed.
The Committee's motion to confirm the Referee's findings of fact and conclusions of law is granted. The sanction recommendation is disaffirmed, and respondent is suspended from the practice of law in the State of New York for a period of three years, effective February 27, 2020, and until further order of this Court.