Matter of Sieratzki (2020 NY Slip Op 04814)





Matter of Sieratzki


2020 NY Slip Op 04814


Decided on August 27, 2020


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 27, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Hon. David Friedman, Justice Presiding,
Dianne T. Renwick
Sallie Manzanet-Daniels
Troy K. Webber
Angela M. Mazzarelli,Justices.


M-66 CM-991

[*1]In the Matter of Steven S. Sieratzki, (admitted as Steven Solomon Sieratzki), an attorney and counselor-at-law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Steven S. Sieratzki, Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, as Steven Solomon Sieratzki, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on July 23, 1980.



Jorge Dopico, Chief Attorney, Attorney Grievance Committee, New York (Si Aydiner and Denice M. Szekely, of counsel), for petitioner.
Michael S. Ross, Esq., for respondent.
Motion Nos. 66, 991 - June 29, 2020
IN THE MATTER OF STEVEN S. SIERATZKI, AN ATTORNEY



PER CURIAM.


Respondent Steven S. Sieratzki was admitted to the practice of law in the State of New York by the Second Judicial Department on July 23, 1980, under the name Steven Solomon Sieratzki. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.
In 2017, the Attorney Grievance Committee (AGC) brought a total of five charges against respondent. The first charge alleges that respondent failed to file personal income tax returns for five tax years. The second charge alleges that on six occasions respondent notarized client signatures on litigation documents after his notary license had expired. The third charge alleges that respondent improperly placed his then girlfriend's monthly trust distributions into his escrow account and made disbursements therefrom to pay for her household expenses in violation of the Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15(b)(1) (requiring that funds belonging to another person which come into the lawyer's possession "incident to the lawyer's practice of law" be maintained in an attorney special account). The fourth charge alleges that respondent improperly placed the monthly trust distributions into his escrow account in order to conceal his then girlfriend's monies from creditors. The fifth charge alleges that respondent maintained a significant portion of a $450,000 legal fee settlement in his attorneys' escrow account over a five-year period in order to shield his monies from tax authorities in violation of, among other things, the Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15(b)(1) .
In his answer and by Joint Stipulation of Disputed and Undisputed Facts, respondent admitted some of the material facts alleged by the AGC, admitted the charges related to his failure to file tax returns and notarial misconduct (charges one, two) and denied the remaining three charges.
By unpublished order entered April 10, 2019, this Court sustained charges one and two, based on respondent's admissions ,and appointed a referee to conduct a hearing on the remaining charges and to recommend such disciplinary sanction as may be appropriate.
By report dated December 10, 2019, the Referee sustained charge three, which alleged respondent misused his IOLA account, on behalf of his then girlfriend, as a personal checking account in violation of rule 1.15(b)(1), as well as charge five insofar as it alleged that respondent improperly attempted to shield his share of a fee settlement from tax authorities in violation of rule 8.4(c) only. The Referee did not sustain charge four, which alleged respondent used his IOLA account to assist his former girlfriend to shield monies from creditors. As to sanction, the Referee recommended that respondent be suspended for two years with his reinstatement conditioned upon proof that he was current in his tax filings and payment obligations.
The AGC now seeks an order, pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR § 1240.8(b) and 22 NYCRR 603.8-a(t)), confirming the Referee's report in full, including his recommendation of a two-year suspension. By a cross motion, respondent requests that the Referee's liability finding sustaining charge three and sanction recommendation of a two-year suspension be disaffirmed and that this Court impose a one-year suspension. Respondent does not oppose the AGC's request that the Referee's liability findings be sustain with regard to charge five. Both AGC and respondent agree that the Referee's liability finding not sustaining charge four be confirmed. For the reasons set forth below, we now grant the motion to confirm the Referee's liability findings, as well as the recommended sanction of suspending respondent from the practice of law for two years.
Charges three and four stem from conduct that occurred during a personal relationship respondent  a 65-year-old sole practitioner  had with a woman who filed the complaint that triggered the AGC's investigation against him. Their personal relationship began in 2002. At the time, the woman, who became his girlfriend, was in the midst of an acrimonious divorce from her now former husband with whom she had six children. In 2004, facing eviction, his girlfriend and her children moved into respondent's apartment.
Respondent became involved in representing his girlfriend in litigation related to her struggling clothing business and in her divorce case and related Family Court matters. In 2004, respondent represented his girlfriend in a child support and neglect proceeding. Because his continued representation posed a conflict as he was a potential witness, in 2005, respondent was disqualified from representing his girlfriend in the child support and neglect proceedings. As a [*2]result of these representations, in 2008 respondent was issued an Admonition (private discipline), based upon the violation of former DR 5-102(A) (prohibiting a lawyer from acting as an "advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client").
In 2005, his girlfriend informed respondent that she was the beneficiary of a family trust through which she received a monthly distribution of $700. She asked respondent to deposit the monthly distribution into his IOLA account so that she could make direct payments of her household expenses. His girlfriend told him that she could not open her own checking account because she had previously filed for bankruptcy (and received a discharge) and she wanted her trust distributions segregated from respondent's funds. As an accommodation to his girlfriend, respondent agreed to do so. From 2005 until in or about 2013, respondent deposited his girlfriend's trust fund distributions into his IOLA account and disbursed them to pay her share of the household expenses. Ultimately, respondent's relationship with his girlfriend soured.
Charge five stems from a 2010 action respondent commenced seeking to recover attorney's fees owed to him by a client. The action settled for $450,000, of which respondent's share was approximately $394,000. Upon settlement, respondent instructed his attorneys not to immediately pay him his full share which was on deposit in their escrow account. Instead, respondent arranged with his lawyer to remit his monies in increments as he directed. This was done via approximately 28 checks issued over a five-year period (2010-2014) in which the total yearly payments to respondent ranged between $27,000 and $230,000. During his November 2016 deposition before the AGC, respondent testified that he could not recall the reason why he requested payment in this manner; however, before the Referee, he admitted that his claimed lack of recollection was false and his true reason for having his settlement funds paid to him gradually was that he feared his then girlfriend would gain access to these monies and dissipate them. Respondent claimed that he had been too embarrassed to disclose the true reason at his deposition but was now able to do so with the passage of time. However, respondent acknowledged that he was aware that there were tax liens against him during the period in which he maintained his share of the settlement funds in his attorneys' escrow account. Moreover, respondent acknowledged that he was aware that an escrow account could be used to the disadvantage of a judgment creditor.
While respondent admitted that he failed to file tax returns for the 2007 to 2010 and 2014 to 2016 tax years, he attributed his failure to meet his tax filing obligations to the stress he was under from his tumultuous relationship and living situation with his girlfriend. Respondent also claims that he used a portion of the legal fee settlement to meet other financial obligations, including child support obligations for his two children and rental arrears. However, respondent acknowledged that he could have used what was left over to pay down his tax debts but he felt that he needed the monies to cover dry spells in his law practice and he feared being left "penniless" if the monies went to pay his tax obligations.
Respondent has taken steps to resolve his tax situation. Respondent retained an accountant, filed his past due tax returns and has escrowed approximately $160,000 with his accountant, who is in the midst of negotiating with tax authorities to settle his outstanding tax debts. Respondent acknowledged that he should have declared the entire attorney's fees settlement as income for the 2010 tax year and he has filed an amended return to reflect this.
With regard to mitigation, the parties stipulated to the following facts: Respondent's misconduct did not adversely impact any client matters; his escrow related misconduct did not involve the misappropriation of client funds nor unjust enrichment through the use thereof; he suffered serious health problems during the period at issue; he fully cooperated with the AGC's investigation; he accepted responsibility for his misconduct and expressed remorse; he is well regarded in the legal community and has an excellent reputation for honesty, integrity, and diligence.
As indicated, with regard to liability, this Court previously sustained charge one, finding that respondent's seven-year failure to file tax returns violated rule 8.4(h) as well as charge two, finding that his notarization of six documents after his notary license expired violated rules 8.4 [*3](c) and 8.4(h). In addition, neither party disputes the Referees' finding not sustaining charge four.
We also find that the record supports the Referee's liability findings with regard to charges three and five. With regard to charge five, respondent claimed before the Referee that he had legitimate reason for keeping the legal fee settlement in his attorneys' escrow account over a five-year period. However, respondent does not challenge the Referee's credibility determination against him that he maintained the legal fee settlement in his attorneys' escrow account over a five-year period in order to shield his monies from tax authorities in violation of rule 8.4-c.
With regard to charge three, the only charge respondent disputes, we confirm the liability findings as firmly supported by the record. In fact, respondent does not challenge the factual predicate for charge three that respondent placed his then girlfriend's monthly trust distributions into his escrow account and made disbursements therefrom to pay for her household expenses. As the Referee found, no evidence was submitted by respondent to suggest that the monthly trust distributions bore any relation to any matter on which respondent represented his girlfriend. Still, respondent argues that rule 1.15(b)(1) does not limit the use of an escrow account to the practice of law. However, this Court has consistently found that it is improper to use an escrow account as a personal account (see e.g. Matter of Kaplan, 113 AD3d 184 [1st Dept 2013]; Matter of Pritikin, 105 AD3d 8 [1st Dept 2013]) .
As to the appropriate sanction, we are of the view that the Referee's recommendation of a two-year suspension is in accord with the applicable precedent (see e.g. Matter of Carlos, 166 AD3d 55 [1st Dept 2018]; Matter of Kayatt, 159 AD3d 101 [1st Dept 2018]; Matter of Brodsky, 153 AD3d 52 [1st Dept 2017]; Matter of Brown, 133 AD3d 7 [1st Dept 2015]; Matter of Dalnoky, 90 AD3d 1 [1st Dept 2011]; Matter of Silva, 28 AD3d 11 [1st Dept 2006]; Matter of Goldstein, 10 AD3d 174 [1st Dept 2004]).
Further, respondent's mitigation evidence is not sufficiently compelling to warrant a lesser sanction, as respondent requests. Moreover, any such mitigation evidence is outweighed by the sheer magnitude of respondent's misconduct, especially the failure to file tax returns for the 2007 to 2010 and 2014 to 2016 tax years, and keeping the legal fee settlement in his attorneys' escrow account over a five-year period in order to shield his monies from tax authorities.
Accordingly, the AGC's motion should be granted, the Referee's findings and conclusions of law are confirmed, and respondent is suspended from the practice of law for a period of two years, and until further order of this Court.
Any application for reinstatement should include documentary proof that respondent is current in his tax filings and payment obligations or has entered into payment agreements with tax authorities for any outstanding tax debts.
Respondent's cross motion is granted only to the extent of confirming the Referee's liability finding not sustaining charge four and is otherwise denied.
All concur.
Order filed. [August 27, 2020]
The Attorney Grievance Committee's motion (M-66) is granted, the referee's findings of fact and conclusions of law confirmed, and respondent is suspended from the practice of law for a period of two years, effective September 28, 2020, and until further order of this Court. Any application for reinstatement should include documentary proof that respondent is current in his tax filings and payment obligations, or has entered into payment agreements with tax authorities for any outstanding tax debt.
The cross motion (CM-991) is granted only to the extent of confirming the referee's liability finding not sustaining charge four and is otherwise denied.