Matter of Liddle (2024 NY Slip Op 05490)

Matter of Liddle

2024 NY Slip Op 05490

Decided on November 07, 2024

Appellate Division, First Department

PER CURIAM 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 07, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Tanya R. Kennedy,J.P.,
Martin Shulman
Bahaati E. Pitt-Burke
John R. Higgitt
Kelly O'Neill Levy, JJ.

Motion No. 2024-00585 2024-02398 Case No. 2021-04460 

[*1]In the Matter of Jeffrey L. Liddle (admitted as Jeffrey Lew Liddle), an Attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Jeffrey L. Liddle, (OCA Atty. Reg. No. 1607704) Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Jeffrey L. Liddle, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 22, 1977.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kevin P. Culley, of counsel), for petitioner.
Howard Benjamin, Esq., for respondent.

PER CURIAM 

Respondent Jeffrey L. Liddle was admitted to the practice of law in the State of New York by the First Judicial Department on February 22, 1977, under the name Jeffrey Lew Liddle. At all relevant times, respondent maintained a registered address in the First Judicial Department.
In December 2021, the Attorney Grievance Committee (Committee) served respondent with a petition of six charges alleging that respondent misused his law firm's attorney escrow account as a personal and business account to prevent his and his law firm's creditors from further levying against their funds, made improper cash withdrawals from the escrow account, and failed to maintain required bookkeeping records. The charges alleged that respondent violated Rules of Professional Conduct (22 NYCRR 1200.0) rules 8.4(c) (charge 1); 1.15(b)(1) (charge 2); 1.15(e) (charge 3); 1.15(d)(1)(i) and (ii) (charge 4); 1.15(d)(2) (charge 5); and 8.4(h) (charge 6). Respondent denied the charges, asserted affirmative defenses and mitigation, and requested that the charges be dismissed or referred to a referee to hear and report.
The Referee appointed by this Court conducted a hearing and issued a report sustaining charges 1, 2, 4, 5 and 6 and not sustaining charge 3. The Referee recommended a sanction of both a censure and a one-year suspension.
The Committee now seeks an order, pursuant to the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.8(b) and the Rules of the Appellate Division, First Department (22 NYCRR) § 6o3.8-a(t), confirming the Referee's report insofar as it sustained five charges; disaffirming the report as to the charge the Referee did not sustain — namely, charge 3; and sanctioning respondent as the Court deems just and appropriate. Respondent opposes and cross-moves, requesting that the Referee's misconduct findings and sanction recommendation be disaffirmed, and that if any charges are sustained, that any discipline be limited to a public censure.
The material facts of this matter are undisputed. Respondent, 75 years old, was a named principal in the law firm of Liddle & Robinson. His practice is focused on representing allegedly defrauded investors and financial and securities professionals disciplined or fired for alleged misconduct, for which he is paid mostly on a contingency basis. Since his law practice did not generate a regular, steady cash flow[*2], respondent relied on bank loans, and later litigation financing, to help pay his law firm's ongoing expenses, which required that respondent and his law partners act as personal guarantors. In or about 2015, respondent and his firm began to experience financial difficulties and relationships with their lenders soured.
One lender sued respondent and several of his partners and ultimately obtained a $6.5 million judgment against them. Respondent's firm's landlord also obtained a $646,233 judgment against the firm, and the firm's business accounts were restrained and garnished. By July 2018, respondent no longer had access to his firm's accounts and by the end of July 2018, all of the firm's business and payroll accounts had been brought to a zero balance. In or about August 2018, respondent resorted to using his law firm's escrow account as a business/operating account and all firm receipts and payments were channeled through the escrow account. This included receiving payments from clients and others via checks and wire transfers. In addition, firm expenses and staff and attorneys' salaries were paid from the escrow account by check, wire transfers, and ATM withdrawals. Respondent continued this practice through at least April 2019.
Respondent testified that his use of the escrow account was the only immediately viable option available to keep his firm from closing. Closure would have devastated most of his clients and negatively impacted his employees, many of whom had worked for him for decades. Respondent denied that his use of the escrow account evinced any fraudulent or dishonest intent on his part to evade creditors. The audit conducted by the Committee's investigative accountant showed that during the period at issue, deposits into and withdrawals from the escrow account totaled approximately $700,000; during this time, the account did not hold any client funds.
In March 2019, respondent filed for bankruptcy and his firm followed in July 2019. Both respondent, who continued to practice law throughout the bankruptcy proceedings, and his firm were granted discharges in March 2022; no fraud claims were brought by any creditor. Respondent lost almost all of his personal assets.
As part of his mitigation, respondent called two character witnesses, both former clients (one of whom went on to work for respondent) who testified as to respondent's professional competence and stated that the charges at issue did not change their favorable opinion of him. Respondent averred also that while he "probably" used the wrong account, there was no co-mingling or theft of client funds.
We find that the Referee correctly sustained charges 1, 2, 4, 5, and 6. He properly found that respondent admittedly misused his firm's escrow account as a business account in violation of New York Rules of Professional Conduct rule 1.15(b)(1) (charge 2).[FN1] The Referee also correctly found that respondent failed to maintain required bookkeeping records in violation of rules [*3]1.15(d)(1)(i), (ii) and 1.15(d)(2) in that he "did not produce a ledger book or any records regarding monies deposited into or distributed from the account other than copies of [] monthly bank statements" (charges 4, 5).
The Referee also correctly sustained the most serious charge, charge 1, which alleged that "[b]y depositing and maintaining his personal funds and earned legal fees in the Escrow Account for the purpose of shielding his own funds from creditors, and prevent further levy by [his law firm's landlord], respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of RPC 8.4(c)." While respondent takes particular issue with the Referee having found him in violation of rule 8.4(c) for his deliberately dishonest misuse of an attorney escrow account to shield his and his law firm's funds from creditors, this finding is amply supported by the documentary evidence presented by the Committee.
In Matter of Goldstein (10 AD3d 174 [1st Dept 2004]), the Court affirmed the Referee's finding that a 70-year-old attorney intentionally misused two escrow accounts to shield his personal funds from tax authorities and imposed a two-year suspension.
The Referee there relied on the documentary evidence introduced by the Committee and rejected Goldstein's testimony that he opened the subject escrow accounts to save the small monthly fees associated with maintaining a business account and at the suggestion of bank officers. Similar to Goldstein, the Referee in this matter fully credited the Committee's substantial documentary evidence and also made an adverse credibility finding via his rejection of respondent's testimony that there was no dishonest intent on his part. This finding is entitled to deference (Matter of Kirschenbaum, 29 AD3d 96, 102 [1st Dept 2006]; Matter of Weinstein, 4 AD3d 29, 33 [1st Dept 2004], lv denied 3 NY3d 608 [2004]).
The Referee further properly found that by having committed the misconduct underlying charges 1, 2, 4, and 5, respondent had engaged in conduct that adversely reflects on his fitness as a lawyer in violation of New York Rules of Professional Conduct rule 8.4(h), and sustained charge 6.
The Referee also correctly noted that despite respondent's assertions otherwise, the only charge to which fraud was relevant was charge one, and therefore, the applicable burden of proof for charges two through six was a preponderance of the evidence, not clear and convincing evidence (see 22 NYCRR 1240.8[b][1] [providing that "[f]ormal disciplinary charges may be sustained when the referee finds, by a fair preponderance of the evidence, each essential element of the charge"]; see also Matter of Capoccia, 59 NY2d 549, 551 [1983]; Matter of Scudieri, 174 AD3d 168, 173 [1st Dept 2019]).
However, the Referee erred by not sustaining charge 3, and that finding should be reversed and the charge sustained. Charge 3 alleged that "[b]y making numerous ATM withdrawals and issuing a check to cash from [*4]his Escrow Account, respondent violated RPC 1.15 (e) [which requires that '[a]ll special account withdrawals shall be made only to a named payee and not to cash']." The Referee counted eight ATM withdrawals with no payee identified for cash amounts ranging between $100 and $500 and one cash withdrawal of $1000. He noted that there was no evidence of the reasons for or uses of these withdrawals, but that they were consistent with the withdrawal and use of monies as petty cash for the law firm. He observed that one check the Committee identified as payable to cash, dated October 18, 2018, bore a notation "JLL DISTRIBUTION."
The record conclusively evidences that respondent repeatedly made improper ATM cash withdrawals from his firm's escrow account and issued at least one escrow check made payable to "cash" during the period at issue in clear violation of New York Rules of Professional Conduct rule 1.15(e) (see e.g. Matter of Meloni, 154 AD3d 67 [1st Dept 2017]; Matter of Escalante, 127 AD3d 37 [1st Dept 2015]; Matter of Pritikin, 105 AD3d 8 [1st Dept 2013]). Accordingly, charge 3 should be sustained.
Turning to the issue of sanctions, the Referee's recommendation of imposing both a public censure and a one-year suspension is not appropriate and should be disaffirmed, and respondent should be suspended for two years. This Court has most frequently imposed a two-year suspension for the misconduct at issue and such a sanction is warranted here (see e.g. Matter of Harper, 192 AD3d 174 [1st Dept 2021] [two-year suspension for misusing escrow account to shield personal funds from tax authorities]; Matter of Sieratzki, 186 AD3d 85 [1st Dept 2020] [two-year suspension for maintaining significant portion of legal fee settlement in attorney's escrow account over five-year period in order to shield monies from tax authorities]; Matter of Kayatt, 159 AD3d 101 [1st Dept 2018] [74-year-old attorney suspended for two years for misuse of two escrow accounts as business/personal accounts which were used to shield personal funds from tax authorities]; Matter of Brown, 133 AD3d 7 [1st Dept 2015] [two-year suspension for depositing legal fees into escrow account and paying business and personal expenses therefrom after the IRS levied against personal and business accounts]; see also Matter of Cassidy, 181 AD3d 51 [1st Dept 2020] [three-year suspension for misuse of escrow account to help clients shield funds from creditors and tax authorities and false testimony to the Committee]). The record supports the Referee's findings that respondent's misuse of his escrow account was deliberate and undertaken for a number of months solely for the purpose of avoiding creditors.
Respondent's mitigation evidence is not sufficiently compelling to warrant a lesser sanction. Respondent asserts that there was no commingling or misuse of client funds and no clients were harmed and there is but a slim likelihood that he will repeat his misconduct. He further [*5]points to a previously unblemished 47-year legal career and record of accomplishment; his precarious financial situation given his age, that his law practice is his primary source of income and that he provides financial assistance to his working adult children; and his charitable contributions and community work. Though respondent asserts that firm attorneys performed pro bono work under his supervision and that he personally represented many clients without any fees for decades, he presented no evidence to the Referee of substantial pro bono activities. Respondent further asserts that his expressions of remorse were evinced in a deposition transcript, the relevant portion of which was lost due to no fault of his own. The Committee correctly notes that notwithstanding the lost deposition transcript that purportedly contained respondent's statements of remorse, respondent had ample opportunity to express remorse during his hearing testimony but failed to do so.[FN2] Based on the record and relevant caselaw in this Department, a two-year suspension is warranted.
Accordingly, the Committee's motion should be granted to the extent of confirming the Referee's liability findings sustaining charges 1, 2, 4, 5, and 6; disaffirming the Referee's findings dismissing charge 3 and sanction recommendation, and instead sustaining charge 3 and imposing a two-year suspension, effective immediately. Respondent's cross-motion is denied in its entirety.
All concur.
Wherefore, it is Ordered that the Committee's motion is granted to the extent of confirming the Referee's liability findings sustaining charges 1, 2, 4, 5 and 6; disaffirming the Referee's findings with respect to charge 3 and the sanction recommendation, and sustaining charge 3 and imposing a two-year suspension, effective December 9, 2024, and
It is further ordered that the cross-motion of respondent Jeffrey L. Liddle, admitted as Jeffrey Lew Liddle, is denied in its entirety, and
It is further Ordered that, pursuant to Judiciary Law § 90, during the period of suspension, respondent Jeffrey L. Liddle, admitted as Jeffrey Lew Liddle, is commanded to desist and refrain from (1) the practice of law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that, during the period of suspension, respondent Jeffrey L. Liddle, admitted as Jeffrey Lew Liddle, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made part hereof; and
It is further Ordered that if respondent Jeffrey L. Liddle, admitted as Jeffrey Lew Liddle, has been issued a secure pass by the Office of Court Administration[*6], it shall be returned to the issuing agency forthwith.
Entered: November 7, 2024

Footnotes

Footnote 1: The Referee sustained charge 2 only insofar as it alleged that respondent misused his firm's escrow account as a business account, but not as a personal account. The Committee does not challenge this finding.

Footnote 2: The Committee states that approximately 30 minutes of respondent's December 22, 2020 deposition, for which the parties appeared remotely due to the COVID-19 pandemic, were lost due to technical issues with the online conferencing platform. The Committee notes that respondent's counsel was informed of this in March 2021, but "did not request then that a further [deposition] of respondent be held or at any time thereafter."